**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RICHARD TEAGUE, on behalf of
himself individually and on behalf of all
others similarly situated,

      Plaintiff,

vs.

AGC AMERICA, INC.,

      Defendant.

Civil Action No. 1:24-cv-00823-VMC

**DEFENDANT AGC AMERICA, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant AGC America, Inc. ("Defendant" or "AGC"), under Federal Rule

of Civil Procedure 12(b)(6), moves to dismiss the First Amended Class Action

Complaint ("First Amended Complaint" or "FAC") (Dkt. 4) filed by Plaintiff

Richard Teague ("Plaintiff") on the grounds that it fails to state a claim upon which

relief can be granted. Principally, Plaintiff, whose personal data was allegedly

compromised during a cyberattack against AGC, pleads no traceable cognizable

loss from the incident. His claims also suffer from other incurable defects which

further warrant dismissal of the First Amended Complaint. In short, mere notice of

a cyberattack does not bestow a cognizable loss on which to sue or to any cause of

action.

## I.    **<u>INTRODUCTION</u>**

This putative class action arises out of a December 2023 data security incident (the "Incident") affecting AGC's network which may have involved Plaintiff's personal information. On December 14, 2023, AGC detected unauthorized activity on its network; it immediately responded by taking measures to secure the network, beginning an investigation, and reporting the incident to law enforcement. The investigation determined that between December 12, 2023, and December 17, 2023, an unauthorized actor accessed and acquired certain files contained on AGC's network. On February 12, 2024, AGC notified individuals whose information may have been subject to the unauthorized access. Plaintiff filed this suit on March 8, 2024.

Under Federal Rule of Civil Procedure 12(b)(6), Plaintiff's First Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted because he does not (and cannot) plead actual losses to support claims seeking damages. Plaintiff's claims also fail for other defects, as set forth in detail below. Importantly, cyberattacks are not strict liability events. Simply being notified of one does not give rise to an actionable claim. Here, Plaintiff pleads nothing more than notice. Thus, this action should be dismissed.

## II.    STATEMENT OF FACTS [1]

### A.    The Incident

AGC is one of the largest manufacturers of glass products in North America. (FAC ¶¶ 1, 21.) On or about February 12, 2024, AGC notified Plaintiff and others that "on December 14, 2023, [AGC] detected an incident that impacted the availability and functionality of [their] computer network." (*Id.* ¶ 33.) "After discovering the incident, [AGC] took measures to secure [its] network, began an investigation, and reported the incident to law enforcement. Through [AGC's] investigation, [it] determined that, between December 12, 2023, and December 17, 2023, an unauthorized actor accessed and acquired certain files contained on [its] network." (*Id.*) AGC's "review of the files that may have been involved identified documents that contained your name, and one or more of the following: Social Security number, driver's license number, financial account information associated with direct deposit, passport, payment card number, company network login credentials, and limited health insurance plan enrollment information for current and former health insurance plan participants." (*Id.*) AGC offered one year of complimentary identity monitoring services. (*Id.* n.2, ¶ 61.)

---

[1] For purposes of this Motion only, the Court must accept as true the factual allegations in the First Amended Complaint. Therefore, Defendant accepts as true the factual allegations in the First Amended Complaint.

### B.    Plaintiff's "Injury" Allegations

Plaintiff alleges that, on or about February 12, 2024, AGC sent him and others a notice regarding the Incident. (*Id.* ¶ 33.) Based on receiving this notice, Plaintiff contends that he has been actually injured, but fails to describe how or when. Lacking any allegations of actual harm, Plaintiff relies on a litany of general statistics and unrelated statements about data breaches, none of which constitute facts pertaining to Plaintiff or this Incident. (*Id.* ¶¶ 103-112.) Plaintiff also asserts various injury theories that are commonly pled in data incident litigation: (a) invasion of privacy; (b) theft of their Private Information; (c) lost or diminished value of Private Information; (d) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (e) loss of benefit of the bargain; and (f)  the continued and certainly increased risk to their Private Information. (*Id.* ¶ 102.)

Although Plaintiff sets forth these theories, Plaintiff fails to substantiate how these theories are plausible substitutes for a concrete injury he has suffered.

### III.    <u>ARGUMENT AND CITATION TO AUTHORITY</u>

### A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Plaintiff Fails to Plead Cognizable Loss, an Indispensable Element of His Claims.[2]

Under Georgia law, Plaintiff's causes of action based on negligence, negligence *per se*, breach of implied contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment all require a cognizable loss resulting from the Incident.[3]

---

[2] Plaintiff's pleading does not specify that any particular state's laws apply to his claims. For purposes of this motion, AGC addresses Plaintiff's claims under the substantive law of the forum (Georgia), without reference to a proper choice of law analysis. *See Equifax, Inc. Cust. Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1311-12 (N.D. Ga. 2019); *see also In re Brinker Data Incident Litig.*, No. 3:18-cv-686, 2020 WL 691848, at *3 n. 5 (M.D. Fla. Jan. 27, 2020) (recognizing that a choice of law analysis is premature at the motion to dismiss stage).

[3] Negligence–*Williford v. Bayview Loan Servicing, LLC*, No. 1:16-CV-4268, 2017 WL 11151639, at *5-9 (N.D. Ga. July 14, 2017) (dismissing negligence claims for failing to sufficiently allege actual damages*); MCI Commc'ns Servs. v. CMES*, Inc., 291 Ga. 461, 462-63 (2012) (Georgia uses an "out-of-pocket measure of damages" for negligence claims; in other words, the "purposes of damages it to . . . compensate for the injury actually sustained"); Negligence *per se*–*Duncan v. Randolph*, 236 Ga. App. 566, 567, 512 S.E.2d 688, 689 (1999) ("It is well established, however, that even when negligence per se is shown, the plaintiff must still prove proximate cause and actual damage in order to recover."); Breach of

In data breach class actions, plaintiffs typically lack an actual injury. Instead, plaintiffs generally assert various injury theories supported only by conclusory allegations, as the Plaintiff does in the instant case. Whether he pleads enough to establish an injury-in-fact for Article III standing is doubtful.[4] Regardless, Plaintiff fails to plead an actual injury or loss sufficient to state a claim under Fed. R. Civ. P. 12(b)(6), which is the focus of this motion. The Court should not "conflate Article III's requirement of injury in fact with [the Plaintiff's] potential causes of action, for the concepts are not coextensive." *Debernardis v. IQ Formulations,*

---

Implied Contract–*Briggs v. N. Highland Co.,* No. 1:22-CV-03640-SCJ, 2024 WL 519722, at *10 (N.D. Ga. Feb. 9, 2024) (opining that the breach of contract claim elements include resultant damages and that express contracts and implied contracts are same except that an implied contract requires a different mode of proof); Breach of Implied Covenant of Good Faith and Fair Dealing–*Knaack v. Henley Park Homeowners Ass'n, Inc.*, 365 Ga. App. 375, 385, 877 S.E.2d 821, 831 (2022), reconsideration denied (Sept. 6, 2022), cert. denied (May 31, 2023) ("While research has revealed no Georgia appellate decisions addressing this issue, the jurisdictions that have addressed it agree that damage resulting from the breach is an essential element of a claim for a breach of the covenant of good faith and fair dealing."); Unjust Enrichment–*Williams v. Jet One Jets, Inc.,* No. 1:08-CV-3737-TCB, 2010 WL 11549767, at *4 (N.D. Ga. Nov. 19, 2010) ("The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated.") (quotations and citations omitted).

[4] *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021) ("Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing"; finding no injury-in-fact based on future harm without allegations of misuse of plaintiff's data); *see also Everhart v. Colonial Pipeline Co.*, No. 1:21-CV-3559, 2022 WL 3699967, at *2 n.5 (N.D. Ga. July 22, 2022) (relying on standing cases to support motion to dismiss based on Fed. R. Civ. P. 12(b)(6) for not meeting higher bar required for pleading cognizable loss).

*LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019); *accord Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) ("[O]ur holding that [p]laintiffs[ ] pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims."). Significantly, "the standard for alleging actual damages is generally higher than that for plausibly alleging injury in fact." *Attias*, 365 F. Supp. 3d at 13.

Instructive on this issue is the Northern District of Georgia's recent decision in the analogous case of *Everhart v. Colonial Pipeline Co.*, No. 1:21-CV-3559-MHC, 2022 WL 3699967, (N.D. Ga. July 22, 2022). Similar to Plaintiff in the present case, the plaintiffs in *Everhart* alleged that they were required to provide their sensitive personally identifiable information ("PII") to the defendant in the course of their business relationship with the defendant and that the defendant suffered a data breach in which "perpetrators exfiltrated or stole voluminous data" including the plaintiffs' sensitive PII. *Everhar*t, 2022 WL at *1. (FAC ¶¶ 3, 22, 44, 62, 135, 161, 184, 190.) But, also like this case, plaintiffs in *Everhart* failed to plead any specific injury, such as instances of misuse or attempted misuse of their data or any other fraudulent activity as a result of the incident. *See id*. at *3. (FAC ¶¶ 134-143.) Instead, they asserted nearly identical theoretical and speculative

injuries to those advanced by Plaintiff.[5] On a Rule 12(b)(6) challenge, this Court rejected all of them, dismissing the case entirely. Based on *Everhart*, Plaintiff's claims should be similarly dismissed.[6]

### 1.   Increased Risk of Future Harm/Identity Theft and Anticipated Mitigation and Remediation Costs are Insufficient Under Rule 12(b)(6).[7]

In *Everhart*, the Northern District of Georgia, relying on the Eleventh Circuit's decision in *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1343-44 (11th Cir. 2021) (standing context), rejected the future-risk-of-

---

[5] *Compare* FAC ¶¶ 102, 140 with *Everhart*., 2022 WL 3699967 at *2 (addressing alleged injuries based on "(i) lost or diminished value of PII, (ii) out-of-pocket expenses associated with the prevention, detection, or recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, not limited to lost time, and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII.").

[6] Other recent decisions by Georgia federal district courts denying motions to dismiss data incident class actions are inapposite, and as such, should not inform the outcome here. *Cf. Baker v. ParkMobile, LLC*, No. 1:21-CV-2182, 2022 WL 3704003, at *2 (N.D. Ga. Aug. 19, 2022) (finding plausible actual injury where plaintiffs alleged fraudulent activity directly and proximately linked to the data incident which involved the theft of, and offer for sale of, personal data of 21 million ParkMobile users, and included allegations that the full database was accessible on a popular hacking forum); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1371–72 (N.D. Ga. 2021) (finding plausible allegation of loss based on risk of future injury because "Plaintiff Johnson has here alleged that she in fact suffered identity theft as a result of the criminal Data Breach").

injury theory as a substitute for actual loss because, although the plaintiffs pled the occurrence of a data breach involving their personal data, they failed to plead any misuse of their data or fraudulent activity as a result of the incident. 2022 WL at *3. As in this case, "Plaintiffs' conclusory allegations of hypothetical and speculative future harm based on an alleged increased risk of identity theft fail to allege a cognizable injury." *Id.* at *4. Similarly in the instant case, Plaintiff "could not 'conjure' injury here by 'inflicting injuries on himself [by expending time or resources] to avoid an insubstantial, non-imminent risk of identity theft.'" *Id.* at *5 (quoting *Tsao,* 986 F.3d at 1345*).*[8]

### 2. Lost Time and Opportunity Costs Associated with Mitigation are Insufficient Under 12(b)(6).

An injury theory based on lost time and opportunity associated with attempting to mitigate the actual consequences of the Incident was also rejected by the court in *Everhart*. *Id*. at *5. "Plaintiffs' arguments fail for the same reasons described above: Plaintiffs' cannot inflict harm on themselves based on fear of

---

[8] *See, e.g.*, *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 634-35 (7th Cir. 2007) (finding the alleged "harm caused by identity information exposure, coupled with the attendant costs to guard against identity theft" insufficient to state negligence claim); *Griffey v. Magellan Health, Inc.*, 562 F. Supp. 3d 34, 44-45 (D. Ariz. 2021) ("The majority view is that 'general allegations of lost time,' 'continued risk to [plaintiff's] personal data,' and 'the danger of future harm' are not cognizable injuries.") (citing *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1232-33 (D Nev. 2020), *aff'd* 845 F. App'x 613 (9th Cir. 2021)); *Attias*, 365 F. Supp. 3d at 14-15 (mitigation costs for "those whose information has been exposed but not misused . . . are not actual damages in their own right").

hypothetical harm that is not certainly impending." Here, Plaintiff attempts to create an injury by alleging that he has spent approximately 50 hours, and will spend additional time in the future, on tasks such as researching and verifying the legitimacy of the Data Breach and signing up for the credit monitoring and identity theft services offered by Defendant. (FAC ¶ 115.) Plaintiff's allegations highlight his efforts to create an injury where one does not exist. Plaintiff's attempt to use Defendant's complimentary protection tool as an injury (i.e., alleging that he had to sign up for credit monitoring and identity theft protection) is senseless.[9]

### 3.    The "Diminished Value of PII" Theory is Routinely Rejected.

Courts have routinely held that "general allegations that a plaintiff's personal information has diminished in value [due to a data breach] are not enough." *Griffey v. Magellan Health, Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021). "[T]o survive a motion to dismiss on this theory of damages, a plaintiff must establish both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market." *Id.* (citations omitted). Merely saying that a market for his PII exists (i.e., the dark web) will not suffice. *Id.* at 46 (refusing to "recognize the 'dark web' as legitimate market by which

---

[9] It would be against public policy for the Court to accept Plaintiff's position that signing up for complimentary credit monitoring creates an actual injury because it would deter victims of cyberattacks from offering complimentary credit monitoring to those that may have been impacted.

individuals may sell their information"). Nor will a court infer that the availability of personal information on the dark web somehow lowers its intrinsic value. *See id.* Indeed, "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1283-85 (M.D. Fla. 2016) (holding that allegations of diminished value of PII following data breach are insufficient for Article III standing); *accord Corona v. Sony Pictures Ent., Inc.*, No. 14-CV-09600, 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015).

Plaintiff alleges that, as a result of the Incident, his and the proposed class's private information, which has an inherent value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. (FAC ¶ 123.) Regardless of Plaintiff's speculation that his information was taken to be sold on the dark web (*id.* ¶ 129), such allegations do not establish a cognizable injury. *See* e.g.*, Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 531 (D. Md. 2016) (rejecting, under less demanding standing context, diminution in value theory because plaintiff did not "explain how the hackers' possession of that information ha[d] diminished its value, nor d[id] she assert that she would ever actually sell her own personal information"). The court in *Everhart*

11

similarly rejected the diminished value theory. 2022 WL 3699967 at *2.[10]

Plaintiff's pleading presents no reason for this Court to reverse course and accept

the diminished value theory in the present case.

### 4.    The "Benefit of the Bargain" Theory is Routinely Rejected.

Plaintiff alleges that "[w]hen submitting Private Information to [AGC] under

certain terms through a job application and/or onboarding paperwork, Plaintiff and

other reasonable employees understood and expected that [AGC] would properly

safeguard and protect their Private Information, when in fact, Defendant did not

provide the expected data security." (FAC ¶ 133.) Accordingly,

"Plaintiff and Class Members received an employment position of a lesser value

than what they reasonably expected to receive under the bargains they struck with

Defendant." (*Id.*) This theory was forcefully dismissed in *Provost v. Aptos, Inc.*,

No. 1:17-CV-02120, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018 (standing

context) as follows:

---

[10] The court in *Everhart* relied on the following precedents of sister courts in this Circuit: *Provost v. Aptos, Inc.*, No. 1:17-CV-02120, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) ("The Court is not persuaded by the hypothetical diminution of value propounded by Plaintiff. Plaintiff has failed to allege with particularity any facts explaining how her personal identity information is less valuable than it was before the Breach."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) ("Plaintiffs have not alleged that their personal information has an independent monetary value that is now less than it was before the Data Breach."); *In re: Cmty. Health Sys., Inc.*, No. 15-CV-222, 2016 WL 4732630, at *8 (N.D. Ala. Sept. 12, 2016) (same).

> Plaintiff argues that she has plausibly alleged that the purchase from Defendant was made because Defendant represented its services were secure and, because the services were not secure, Plaintiff overpaid Defendant and has alleged injury-in-fact. However, Plaintiff does not allege any facts making it plausible that the price she "paid for the goods included an amount that both parties understood would be allocated toward protecting customer data."

*Id*. Similar to the plaintiff in *Provost,* Plaintiff in the present case fails to allege that he read or relied on any assertion made by AGC related to data protection before providing his information to AGC. *Id.* Not surprisingly, the overpayment or "benefit of the bargain" theory has been consistently rejected by courts nationwide, and should be rejected here as well. *See, e.g., Keim v. S. Fl. Fair and Palm Breach Cnty. Expositions, Inc.*, 535 F. Supp. 3d 1273, 1279 n.4 (S.D. Fla. 2021) (rejecting this theory in the standing context); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d. 1243, 1257 (M.D. Fla. 2019) (same); *In re: Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *7-8 (N.D. Ala. Sept. 12, 2016) (same). [11]

---

[11] As it relates to Plaintiff's invasion of privacy and theft of private information injury theory, it should be noted that these types of alleged injuries are typically alleged as causes of action. However, Plaintiff has not alleged them as individual causes of action because there are no grounds to support such causes of action. Thus, Plaintiff has attempted to transform these causes of action into injury theories in order to overcome his inability to plead a *prima facie* case. These causes of action also fail as injury theories because "[e]very data breach action . . . involves a loss of privacy." *C.C. v. Med-Data Inc.*, 2022 WL 970862, at *9 (D. Kan. Mar. 31, 2022); *see also In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790 (JLS/MJR), 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) (collecting cases; holding "this theory of standing has been rejected in the data breach context

### C.    *Plaintiff's Claims Suffer Additional Fatal Defects.*

#### 1.    Plaintiff Fails to Plausibly Plead Causation to Support His Negligence and Negligence Per Se Claim for Negligence (Count I and Count II).

"To state a viable negligence claim under Georgia law, a plaintiff must allege (1) a duty on the part of the defendant, (2) a breach of that duty, (3) causation of the alleged injury, and (4) damages resulting from the alleged breach of the duty." *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1218 (11th Cir. 2023). "It is well established, however, that even when negligence per se is shown, the plaintiff must still prove proximate cause and actual damage in order to recover." *Duncan v. Randolph*, 236 Ga. App. 566, 567, 512 S.E.2d 688, 689 (1999). Not only has Plaintiff failed to plead a viable injury or damages to sustain a negligence or negligence *per se* claim, as discussed above, but Plaintiff also fails to plausibly plead that his alleged damages were proximately caused by the Incident. (FAC ¶¶ 171-72, 180.) Proximate cause is indispensable element of a negligence claim, which is not satisfied based on speculation and purely temporal coincidences. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1318 (N.D. Ga. 2019).

---

where, like in this case, plaintiffs have failed to demonstrate any concrete or particularized injury associated with the disclosure"); *Aponte v. Northeast Radiology, P.C.*, 2022 WL 1556043, at *4 (S.D.N.Y. May 16, 2022) (same; "according to plaintiffs, it is not defendants who improperly accessed plaintiffs' data, but instead other, unauthorized third parties").

Contrary to the plaintiffs in *In re Equifax. Inc.* who "alleged . . . they suffered some form of identity theft or other fraudulent activity as a result of the Data Breach," Plaintiff in the present case does not make any allegations that would show a legally attributable causal connection between AGC's Incident and the insufficient injury theories alleged. Therefore, in addition to pleading insufficient injury theories, Plaintiff fails to allege (and cannot allege) how AGC's Incident proximately caused so-called injuries. The lack of causation alleged highlights Plaintiff's attempt to conjure injury to inflict upon himself in order to create a cause of action. *Tsao*, 986 F.3d at *4-5.

Further, to avoid dismissal for failure to plead causation, Plaintiff must allege facts sufficient to rule out other potential causes of his purported injury. A bare allegation that he received the Notice Letter, thus the Incident (and AGC) must be the cause of his "damages," is not enough. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327-28 (11th Cir. 2012) (denying motion to dismiss negligence claim because the complaint made explicit connections in data breached and identity theft; "Had Plaintiffs alleged fewer facts, we doubt whether the Complaint could have survived a motion to dismiss."). In short, to sustain the negligence claim, the Complaint "must include allegations of a nexus between the two instances [i.e., the Incident and the alleged injuries] beyond allegations of time and sequence." *Id*. at 1326. Here, Plaintiff has not even alleged injuries that could create a nexus with

15

the Incident because the injuries are self-created.

### 2.    Plaintiff Fails to State a Breach of Implied Contract Claim (Count III).

The elements for a breach of contract claim [under Georgia law] ... are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Briggs v. N. Highland Co.,* No. 1:22-CV-03640-SCJ, 2024 WL 519722, at *10 (N.D. Ga. Feb. 9, 2024) (quoting *Norton v. Budget Rent A Car Sys.*, 307 Ga. App. 501, 502, 705 S.E.2d 305 (2010)). An implied contract is the same as express contract except that an implied contract requires a different mode of proof. *Id.*

Plaintiff alleges that, when he provided his private information to AGC as a condition of his employment or employee beneficiary status, he entered into an implied contract with AGC which provided that AGC agreed to reasonably protect his private information. (FAC ¶ 189.)  Plaintiff also alleges "on information and belief" that "Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff . . . that it would only disclose Private Information under circumstances, none of which relate to the Data Breach."[12] (FAC ¶ 186.) Similar to the plaintiff in *Briggs*, "[Plaintiff] has also not

---

[12] Courts within this Circuit have held that "[a]lthough 'information and belief pleading can sometimes survive a motion to dismiss ... [where] a plaintiff ... allege[s] specific facts to support a claim[, c]onclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations

pointed to any 'document, expression, or action of the employer which indicated an intention to protect the employee's personal information.' " *Briggs*, 2024 WL at *10 (quoting *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 591 (N.D. Ill. 2022)). Therefore, "like the plaintiff in *Ramirez*, here, Plaintiff has failed to allege non-conclusory facts from which this Court could infer Defendant agreed to be bound by any data retention or protection policy." *Id* (referencing *Ramirez,* 69 F.4th at 1221).

### 3.    Breach of Implied Covenant of Good Faith and Fair Dealing is Improperly Pled (Count IV).

"Under Georgia law, though '[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement,' this covenant 'is not an independent contract term.'" *Adr1assist, LLC v. Lima One Cap., LLC*, 580 F. Supp. 3d 1293, 1300 (N.D. Ga. 2022) (quoting *Centennial Vill., LLC v. Fulton Cnty. Sch. Dist.*, 359 Ga. App. 616, 616, 859 S.E.2d 582 (2021)). Thus, "the implied covenant 'modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure.*'" *Id.* (quoting *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903

---

stated upon information and belief that do not contain any factual support fail to meet the [plausibility] standard.'" *Magnum Constr. Mgmt., LLC v. WSP_USA Sols., Inc.,* 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) (quoting *Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018).

F.2d 1414, 1429 (11th Cir. 1990)). "The 'implied promise becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions that it modifies and therefore cannot provide an independent basis for liability.'" *Id*. (quoting *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1243 (11th Cir. 2019). Ultimately, Plaintiff must allege facts showing that AGC breached an actual term of an agreement in order to sustain a claim for breach of the implied covenant of good faith and fair dealing. *Id*. Plaintiff has not only failed to identify the existence of an express contract, but has also failed to adequately allege that AGC breached an express provision of a contract; therefore, his claim must be dismissed. *Id.* (dismissing plaintiff's claim for breach of implied covenant of good faith and fair dealing); *see Wilson v. LoanDepot.com LLC*, No. 120CV01175TCBWEJ, 2021 WL 7708411, at *4 (N.D. Ga. May 10, 2021), report and recommendation adopted, No. 1:20-CV-1175-TCB, 2021 WL 7708406 (N.D. Ga. Nov. 10, 2021) (opining relief based on breach of implied covenant good faith and fair dealing may only be considered as part of a count alleging breach of contract); *see also U.S. Bank, N.A. v. Phillips*, 734 S.E.2d 799, 803 (Ga. Ct. App. 2012) (holding that debtor could not maintain claim for breach of implied covenant of good faith and fair dealing absent valid breach of contract claim).

18

**4.    Plaintiff Fails to Plead a Conferred and Unjustly Retained Benefit in Order to Establish an Unjust Enrichment Claim (Count V).**

"Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Wachovia Ins. Servs., Inc. v. Fallon*, 299 Ga. App. 440, 449 (2009); *see Sitterli v. Csachi*, 344 Ga. App. 671, 674-75 (2018). Here, Plaintiff alleges that he conferred a monetary benefit to AGC in two forms: (1) providing labor; and (2) providing his private information. (FAC ¶ 206.) Plaintiff further alleges that AGC would be unable to engage in its regular course of business without his labor and private information, and that AGC knew Plaintiff conferred this benefit because AGC accepted and retained such benefit. (*Id.* ¶¶ 206-07.) According to Plaintiff, AGC was supposed to allocate some of the monetary benefit provided by Plaintiff to purchasing adequate data management and security in order to secure his private information. (*Id.* ¶ 208.) In sum, Plaintiff contends that AGC cannot retain an unspecified "monetary benefit" because the Incident occurred which, in and of itself, demonstrates that AGC had inadequate data security. (*Id.* ¶¶ 206-09.)

This claim fails because the only plausible inference to be gleaned from the Complaint is that Plaintiff received employment-related benefits from AGC, that

19

Plaintiff provided his PII to AGC in connection with employment-related benefits, and that Plaintiff received those employment-related benefits. In other words, Plaintiff got what he paid for. *Cf. Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) ("Irwin paid for food products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase, as is the ability to sit at a table to eat her food, or to use Jimmy John's restroom.").

Ultimately, Plaintiff's First Amended Complaint contains only conclusory allegations to support this claim, and the mere "recital of elements" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). This claim is, at best, a repackaging of Plaintiff's flawed injury theories discussed above. As with those theories, fatal gaps remain, including Plaintiff's failure to tie any payments to agreements or duties to provide data security, or to cognizable damage or loss resulting from the compromise of his personal data.

### 5. The Court Should Decline to Hear Plaintiff's Claim for Recovery of Expenses of Litigation (Count VI).

O.C.G.A. § 13-6-11 provides that:

> [t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

20

Plaintiff alleges that AGC "acted in bad faith and caused the Plaintiff and the Class Members unnecessary trouble and expense with respect to the transaction or events underlying this litigation." (FAC ¶ 218.)

The allegations set forth by Plaintiff do not sufficiently support the bad faith prong of O.C.G.A. § 13-6-11.

> "Bad faith is bad faith connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen. Bad faith requires more than bad judgment or negligence, rather the statute imports a dishonest purpose or some moral obliquity and implies conscious doing of wrong and a breach of known duty through some motive of interest of ill will."

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1345 (N.D. Ga. 2019) (internal citations and quotations omitted). The court in *In re Equifax, Inc.* concluded that the plaintiffs successfully alleged bad faith, in order to withstand defendant's motion to dismiss, because the complaint included allegations that "the [d]efendants knew of severe deficiencies in their cybersecurity, and of serious threats, but nonetheless declined to act. *Id.* (*Compare with* FAC ¶¶ 51-65) (FAC includes no allegations that AGC knew of actual issues with its system). Plaintiff has not alleged any behavior by AGC that is similar to the behavior alleged in *In re Equifax, Inc.* in order to recover under the bad faith prong under O.C.G.A. § 13-6-11.

Further, "a plaintiff cannot show stubborn litigiousness or unnecessary trouble 'if a bona fide controversy clearly exists between the parties.'" *Peeples v. Caroline Container, LLC,* No. 4:19-CV-00021-HLM, 2019 WL 12338071, at *7 (N.D. Ga. Apr. 4, 2019) (quoting *Backus Cadillac-Pontiac, Inc. v. Brown*, 185 Ga. App. 746, 747, 365 S.E.2d 540, 541 (1988)). As detailed above, Plaintiff has failed to plead a sufficient injury and his other claims are without merit and include fatal deficiencies. Therefore, AGC "cannot be sanctioned under O.C.G.A. § 13-6-11 for opposing what ultimately proves to be a baseless claim." *Peeples*, 2019 WL at *7.

## IV.   CONCLUSION

For the foregoing reasons, AGC respectfully requests that its Motion to Dismiss is granted.

Respectfully submitted this 3rd day of May, 2024.

> */s/ John P. Hutchins*
> John P. Hutchins
> jhutchins@bakerlaw.com
> Georgia Bar No: 380692
> Olivia S. Williams
> owilliams@bakerlaw.com
> Georgia Bar No: 804380
> **BAKER & HOSTETLER LLP**
> 1170 Peachtree Street, NE, Suite 2400
> Atlanta, GA 30309
> Telephone: 404.459.0050
> Facsimile: 404.459.5734
>
> *Attorneys for Defendant*

## RULE 7.1(D) CERTIFICATE

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1(C).

This 3rd day of May, 2024.

/s/ John P. Hutchins
John P. Hutchins
GA Bar No: 380692

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within and foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

This 3rd day of May, 2024.

*/s/ John P. Hutchins*
John P. Hutchins
GA Bar No: 380692