**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RICHARD TEAGUE,
individually, and on behalf of all
others similarly situated,

      Plaintiff,

v.

AGC AMERICA, INC.,

      Defendant.

Civil Action No.
1:24-cv-00823-VMC

**ORDER**

Before the Court is the Motion to Dismiss ("Motion," Doc. 12) filed by

Defendant AGC America, Inc. ("Defendant" or "AGC"). Plaintiff Richard Teague,

individually, and on behalf of all others similarly situated, filed a Response in

Opposition to the Motion ("Response," Doc. 23). AGC filed a Reply in Support of

its Motion ("Reply," Doc. 26). Having read and considered the foregoing briefs

and all matters properly of record, the Court will grant in part and deny in part

the Motion.

## Background[1]

AGC is a company that manufactures glass products in North America for commercial, residential, interior, and industrial applications, as well as other glass products for the automotive and electronic display markets. (Am. Compl. ¶ 21, Doc. 4). Mr. Teague is a former employee of AGC. (*Id.* ¶ 22). As a condition of employment, AGC required employees like Mr. Teague and even applicants to confide and make available to it their sensitive and confidential personally identifiable information (PII).[2] Mr. Teague worked for AGC from approximately 2016 to 2019. (*Id.* ¶ 134).

Mr. Teague, on behalf of himself and the proposed class, contends that by obtaining, collecting, using, and deriving a benefit from its employees' PII, AGC assumed legal and equitable duties to those individuals. (*Id.* ¶ 32). Moreover, he alleges (and the Court takes as true for the purpose of the Motion) that AGC knew or should have known that it was responsible for protecting his Private

---

[1] Because this case is before the Court on a Motion to Dismiss, the following facts are drawn from Plaintiff's First Amended Class Action Complaint ("Am. Compl.") and are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546 (1964).

[2] Plaintiff defines PII as "first and last names, Social Security numbers, driver's license numbers, financial account information associated with direct deposits, passports, payment card numbers, company network login credentials." (Doc. 4 at ¶ 2).

Information[3] from unauthorized disclosure. (*Id.*).[4] Despite this responsibility, and despite Mr. Teague's best efforts to safeguard his personal information, Mr. Teague alleges that cyber-criminals targeted, exfiltrated, and continue to possess his PII as a result of AGC's breach of its duty to its employees. (*Id.* ¶ 3).

On December 14, 2023, AGC detected unauthorized access to their computer networks. (*Id.* ¶ 33). AGC did not notify Mr. Teague and the Class of the data breach until on or about February 12, 2024, when AGC began to send notice letters to the affected individuals ("Notice Letter"). (*Id.*). AGC's Notice Letter states that on December 14, 2023, it "detected an incident that impacted the availability and functionality of [their] computer networks," after which it "took measures to secure its network," investigated the activity, and "reported the incident to law enforcement." (*Id.*). The investigation determined that "an unauthorized actor accessed and acquired certain files contained on [their] network" between December 12, 2023, and December 17, 2023 (the "Data Breach"). (*Id.*). The Notice

---

[3] Plaintiff further explains that "Private Information" is "PII collectively with protected health information (PHI as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")." *Id.* The Court uses Private Information to describe the information disclosed by the Data Breach, unless quoting directly from the Complaint.

[4] Mr. Teague also points to AGC's Privacy Policy on its public facing website touting its "management structure and framework in place to prevent any unauthorized access to and loss, falsification, or leakage of Personal Information and strives to ensure appropriate security measures are taken" to further support the duty owed to him by his former employer. (*Id.* ¶ 26).

Letter informed affected individuals that the documents obtained in the leak revealed his name "and one or more of the following: Social Security Number, driver's license number, financial account information associated with direct deposit, passport, payment card number, company network login credentials, and limited health insurance plan enrollment information" without further specification. (*Id.*). In its Notice Letter, AGC offered identity monitoring service for one year. (*Id.* ¶ 139).

As a result of AGC failure to adequately protect the PII in its possession, the detailed personal information of Mr. Teague and other present and former employees, amounting to more than twenty-thousand individuals, was disclosed without authorization, and compromised in the Data Breach. (*Id.* ¶¶ 57–60). Mr. Teague alleges that the Data Breach, the unauthorized access and exfiltration of the PII of more than 20,000 current and former employees, was preventable and a direct result of AGC's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect employees' personal information. (*Id.* ¶ 55). Moreover, Mr. Teague argues that his data would not have fallen into the hands of criminals but for AGC's failures because he has taken reasonable steps to maintain the confidentiality of his Personal Information and would not have entrusted AGC with his Personal Information if he had known that AGC would fail to take adequate measures to protect it from unauthorized

use or disclosure. (*Id.* ¶¶ 27, 137). AGC was, or should have been, fully aware of the unique type and the significant volume of data on AGC's servers, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data. (*Id.* ¶¶ 51–60).

Upon learning that his Private Information was accessed by cyber thieves, Plaintiff took reasonable measures to mitigate the consequences of the Data Breach and must continue to spend his own time and effort doing so because the Private Information compromised in the Data Breach is immutable, i.e., it will not change over the course of Plaintiff's lifetime. (*Id.* ¶¶ 82, 115–117).

As a result of AGC's failure to prevent the Data Breach, Mr. Teague and the Class Members have suffered and will continue to suffer significant injury and damages. Namely, Mr. Teague points to cognizable injuries in the form of (1) the imminent and substantial risk of identity theft or fraud; (2) lost time and opportunity costs associated with attempting to mitigate the harm caused by the data breach; (3) out-of-pocket expenses associated with current and future recovery and remediation of identity theft; (4) anxiety and stress about the key details omitted from AGC's Notice Letter; and (5) diminution of value of their private information. (*Id.* ¶¶ 102–112, 130–118, 140, 141, 119–128). Mr. Teague brings claims for negligence, negligence *per se* and breach of implied contract; he seeks injunctive and compensatory relief. (*Id.* ¶¶ 173–74). Mr. Teague also brings

this putative class action on behalf of "all individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party because of the data breach reported by AGC in February 2024 (the "Class")." (*Id.* ¶ 145).

Mr. Teague raises six causes of action in the Amended Complaint: Count I – Negligence, Count II – Negligence Per Se, Count III – Breach of Implied Contractual Duty, Count IV – Breach of Implied Covenant of Good Faith and Fair Dealing, Count V – Unjust Enrichment, and Count VI – Breach of State Law Claim (O.C.G.A. § 13-6-11). (Doc. 4). AGC moves to dismiss on the grounds of failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Principally, AGC alleges that Mr. Teague has not pled actual losses from the incident. (Doc. 12 at 2). AGC further argues that Counts I and II should be dismissed for failure to establish causation between the Data Breach and Mr. Teague's injuries. (Doc. 12 at 14–15). In his Response, Mr. Teague withdraws his claim of breach of Implied Covenant of Good Faith and Fair Dealing, and therefore the Court will not address that claim. (Doc. 23 at 16).

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555. Pleadings do not require any particular technical form and must be construed "so as to do justice." Fed. R. Civ. P. 8(d)(1), (e).

## Discussion

First, the Court will address the threshold matter of subject matter jurisdiction. The Court then considers AGC's arguments for failure to state a claim under Rule 12(b)(6) as to Mr. Teague's tort, contract, and statutory claims.

### I.    Mr. Teague has standing to bring this action.

AGC raises doubts about Mr. Teague's Article III standing to bring the case while also assuming that he has standing. (Doc. 12 at 6). The Court cannot make that assumption. Prior to addressing the motion to dismiss, the Court must address standing as a threshold issue. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012).

### A.   Legal Standard for Article III Standing

Plaintiff bears the burden of establishing standing to bring this civil action under the cases and controversies clause of Article III of the U.S. Constitution. *Covington v. Gifted Nurses, LLC*, No. 1:22-cv-4000-VMC, 2023 WL 5167366, at *4 (N.D. Ga. July 19, 2023). A plaintiff establishes standing when, at a minimum, he demonstrates that (1) he suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendant's Motion suggests that Plaintiff fails to meet the injury in fact requirement. (Doc. 12 at 6 fn. 4). An injury in fact must be both "concrete and particularized." *Spokeo*, 578 U.S. at 339. To be a particularized injury requires that it "affect plaintiff individually" and be "actual or imminent, not conjectural or hypothetical." *Id.* at 340. The allegations need not be specific; when we rely on the complaint, "general factual allegations . . . will suffice." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 937 (11th Cir. 2020). To be concrete is not necessarily synonymous with "tangible." *Spokeo*, 578 U.S. at 340. Although tangible injuries are perhaps easier to recognize, courts have confirmed that intangible injuries can nevertheless be concrete. *Id.*

8

Among the intangible injuries that satisfy the requirement of concreteness is the risk of real harm. *Id.* at 341. In *Tsao v. Captiva MVP Restaurant Partners*, the Eleventh Circuit distilled two relevant principles in considering whether the threat of future harm is concrete for standing purposes. 986 F.3d 1332, 1339 (11th Cir. 2021). First, the threat of future harm is concrete for standing purposes when the threat is a "substantial risk" or "certainly impending." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1201 (S.D. Fla. 2022). Second, if the threat of future harm does not meet that standard, a plaintiff cannot "conjure standing by inflicting some direct harm on itself to mitigate a perceived risk." *Id.* (quoting *Tsao*, 986 F.3d at 1339). "In short, '[e]vidence of a mere data breach does not, *standing alone*, satisfy the requirements of Article III standing.'" *Id.* (quoting *Tsao*, 986 F.3d at 1344) (emphasis added).

## B.      Mr. Teague pleads imminent and substantial risk of future harm.

While actual "identity theft and damages resulting from such theft [are concrete injuries,] . . . [a] plaintiff can also satisfy the concreteness element by showing a 'material' risk of harm," and "actual identity theft is by no means required when there is a sufficient risk of identity theft." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022) (internal citations omitted). Other courts in this district have

found "substantial risk of future harm" where criminals have stolen personal data and continue to possess it. *See Tracy v. Elekta, Inc.*, 667 F. Supp. 3d 1276, 1283 (N.D. Ga. 2023).

Mr. Teague's allegations differ from those made in *Tsao* for two reasons: (1) there is an actual allegation of misuse and information being in the hands of criminals and (2) the information targeted by the criminals is immutable, unlike the credit card numbers in *Tsao*. Contrary to Defendant's reading of *Tsao*, the Eleventh Circuit did not foreclose the notion that the substantial risk of future identity theft could confer standing; in fact, it recently held otherwise. *Id.*; *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023), *cert. denied sub nom. Brinker Int'l, Inc. v. Steinmetz*, 144 S. Ct. 1457 (2024). In *Green-Cooper*, three plaintiffs showed injury in fact when they alleged that their credit card and personal information was "exposed for theft and sale on the dark web." 73 F.4th at 889. Here, Mr. Teague pleads a set of facts with more than mere conclusory allegations of some hypothetical future harm. Specifically, Plaintiff alleges, and the Court takes as true for the purposes of this motion, that (1) the PII in question is now in the hands of criminals and (2) the information exfiltrated by criminals is of the type necessary to perpetrate identity theft. (Doc. 4 ¶¶ 3, 106, 129). As in *Green-Cooper*, the fact that Mr. Teague's person information is now "exposed for theft

10

and sale on the dark web… is critical." *Green-Cooper*, 73 F.4th at 889. Therefore, the

Court finds that Mr. Teaque has standing.

## II.      Mr. Teague states a claim on which relief can be granted.

Having resolved the threshold question of standing, the Court next turns to

AGC's merits challenges.

### A.      Mr. Teague plausibly alleges a claim for negligence.

Under Georgia law, a plaintiff bringing a negligence claim must show four

elements: (1) a duty on the part of the defendant, (2) a breach of that duty, (3)

causation of the alleged injury, and (4) damages resulting from the alleged breach

of the duty. *Collins v. Athens Orthopedic Clinic, P.A.*, 837 S.E.2d 310, 312 (Ga. 2019);

*Ramirez v. Paradise Shops, LLC.*, 69 F.4th 1213, 1216 (11th Cir. 2023). In their Motion,

AGC argues that Plaintiff has failed to meet two essential elements of his claim: (1)

damages in the form of cognizable loss and (2) proximate causation. (Doc. 12 at

14).

#### 1.      Mr. Teague pleads a cognizable loss.

AGC argues Mr. Teague has not alleged cognizable loss, writing that

"[p]laintiff relies on a litany of general statistics and unrelated statements about

data breaches, none of which constitute facts pertaining to Plaintiff or this

Incident." (Doc. 12 at 4). Further, AGC urges the Court to require instances of

11

misuse or attempted misuse of Plaintiff's data or any other fraudulent activity to plead negligence. (*Id.* at 7).

The Georgia Supreme Court articulated what constitutes a cognizable loss for a common law negligence claim in this State.[5] *Collins*, 837 S.E.2d at 316 (Ga. 2019). In *Collins*, an anonymous hacker stole the personally identifiable information of current and former patients of a specialty clinic. *Id.* at 311. The hacker demanded a ransom, and when the clinic refuse to pay, the hacker placed some of the stolen data for sale on the "dark web." *Id.* Affected patients argued that they were now exposed to fraudulent activity and identity theft and experienced damages in the form of lost time and expense to mitigate the impact of the data breach. *Id.* at 311–12. The court recognized that the injuries alleged by the plaintiff were sufficient to survive a motion to dismiss for failure to state a negligence claim, because "an important part of the value of that data to anyone who would buy it in that fashion is its utility in committing identity theft." *Id.* at 315. The court found sufficient plaintiffs' allegations that criminals "are able to assume their identities and fraudulently obtain credit cards, issue fraudulent checks, file tax refund returns, liquidate bank accounts, and open new accounts in

---

[5] The parties appear to agree that Georgia law applies.

12

their names such that the risk of identity theft is imminent and substantial." *Id.* at 316.

Courts in this district have held that, even under the higher pleading standard in federal court, a plaintiff plausibly alleges cognizable injury under Georgia law "where, at the very least, criminals have hacked into a data system and exfiltrated personally identifiable information and health information," even if the plaintiff had not suffered actual identity theft. *See Tracy*, 667 F. Supp. 3d at 1276.[6] In *Tracy*, plaintiffs sued a hospital and operator of a cloud-based data system following a cyberattack in which their personal information was accessed. *Id.* at 1280. The plaintiffs alleged cognizable harm in the form of an "array of injuries, including the disclosure, compromise, and theft of their information; costs associated with the detection and prevention of identity theft; and injury arising from the actual" or "potential fraud and identity theft posed by their Sensitive Information being placed in the hands of the ill-intentioned hackers" or other criminals. *Id.* The court found that the plaintiffs sufficiently alleged harm because, even if they did not allege that "their data is actually for sale on the dark web or elsewhere, they have alleged that it is in the hands of criminals" and that the "type

[6] While Georgia's notice-pleading rules do not apply in federal court, Georgia law governs what constitutes a cognizable injury for the purposes of pleading a negligence claim. *Tracy*, 667 F. Supp. 3d at 1282.

13

of personal information" accessed and copied "was often trafficked on the dark web and used to gain access to various areas of the victim's digital life." *Id.* at 1283.

Mr. Teague makes near identical allegations to those in *Tracy* in his complaint. (Doc. 4 ¶ 9–10). Much like the plaintiffs in *Tracy*, criminals are "armed with [Mr. Teague's] Private Information accessed in the Data Breach, . . . [and] have already engaged in identity theft and fraud." (*Id.*). Also, Mr. Teague has suffered a litany of common injuries, including "invasion of privacy, theft of his Private Information; lost or diminished value of Private Information; lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; loss of benefit of the bargain" plus "the continued and certainly increased risk to his Private Information; . . . [and] fear, anxiety, and stress." (*Id.* at ¶ 140–41). Further, this Court is not so quick to dismiss the statistics cited in the Amended Complaint as unrelated to the Plaintiff's negligence claim. In reading the Complaint, the Court must grant the non-moving party all "the benefit of all favorable inferences that can be drawn from the facts alleged." *Iqbal*, 556 U.S. at 678. A reviewing court is also allowed to use its common sense and judicial experience to determine plausibility. *Covington*, 2023 WL 5167366 at *8 (citing *Iqbal*, 556 U.S. at 679). The statistics and statements are not "unrelated," but rather support a finding of plausibility as to both damages and proximate cause at the pleading stage of a data breach case.

The focus of AGC's argument is that "mere notice of a cyberattack does not bestow a cognizable loss." (Doc. 12 at 1) (citing *Everhart v. Colonial Pipeline Co.*, No. 1:21-CV-3559-MHC, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022)). AGC relies on *Everhart*, in which landowners who owned land adjoining a pipeline company's pipeline "alleged that they were required to provide their sensitive personal information . . . in the course of their business relationship with defendant." *Id.* The landowners sued after the pipeline company was the victim of a ransomware attack in which perpetrators broke into their system and encrypted certain data on the pipeline company's network. *Id.* at *1. The pipeline company immediately paid the $4.4 million ransom to attackers in return for a decryption tool. *Id.* Upon receiving notice that their "name, contact information, date of birth, government-issued ID, and/or health-related information" were exposed to an unauthorized third party, plaintiffs sued. *Id.* The court held that landowners had not shown injury in fact because they alleged only "conclusory allegations of hypothetical and speculative future harm based on an alleged increased risk of identity theft." *Id.* at *4. As in *Tsao*, the *Everhart* court found that the landowners' failure to show an imminent future risk foreclosed allowing the landowners to use the cost to mitigate future harms as an injury in fact. *Id.* at *5.

Here, Mr. Teague alleges that: the information which was collected by AGC was the type of information that would typically be necessary to open an account

15

or commit fraud, including names and Social Security numbers, and bank account and routing information (*Id.* ¶ 129); unlike in *Everhart*, the PII is still in the hands of criminals (*Id.*); and the stolen information remains unencrypted and available for purchase on the dark web (Doc. 4 ¶ 140). From these allegations, and common sense, the Court needs only a short chain of logical inferences to conclude that Mr. Teague and the Class are at imminent and substantial risk of identity theft. Thus, Mr. Teague has shown a cognizable loss to survive a motion to dismiss.

### 2.    Mr. Teague's Complaint adequately alleges causation.

Next, AGC contends that the Complaint fails to plausibly allege a connection between the Data Breach and Plaintiff's damages. (Doc. 12 at 14). Proximate cause is an indispensable element of a negligence claim and is not satisfied based on speculation and purely temporal coincidences. *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1318 (N.D. Ga. 2019). At a minimum, to allege facts "more than consistent with liability" a complaint must include factual allegations that rule out obvious alternative explanations for the alleged harm. *Covington*, 2023 WL 5167366 at *7–8. A plaintiff need not rule out *every* possible alternative explanation, only "obvious" ones. *Id.* Determining whether an alternative explanation is so obvious it renders the plaintiff's theory of the case implausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

16

Mr. Teague's Complaint offers enough factual allegations to conclude that but for the failure of AGC to protect his PII in their possession he would not have suffered the theft of his PII. First, the Complaint rules out obvious alternative explanations. (Doc. 4 ¶¶ 28, 137) ("Plaintiff has taken reasonable steps to maintain the confidentiality of his Private Information . . . [and] he has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source."). Next, Mr. Teague alleges the data breach "was targeted and exfiltrated by cyber-criminals" and that the PII remains in the hands of those cyber-criminals. (*Id.* ¶ 3). Finally, the complaint alleges that given the type of information exfiltrated in the Data Breach, the "stolen information [has] been placed, or will be placed, on the black market/dark web for sale and purchase[d]" for identity theft crimes. (*Id.* ¶ 129). Reviewing these factual allegations, the Court concludes that Mr. Teague establishes a causal connection between AGC's Data Breach and his harm.

## B.    Mr. Teague pleads negligence per se.

Count II of the Complaint raises a claim for negligence per se founded on Section 5 of the Federal Trade Commission Act of 1914, 15 U.S.C. § 45 ("FTC Act"). (Amend. Comp. ¶¶ 175–82). AGC argues that Count II should fail for the same reasons as the negligence claim alleged in Count I. (Doc. 12 at p. 14–15). However, the Court has previously held that a violation of the FTC Act can be negligence per

se under Georgia law. *See Covington*, 2023 WL 5167366 at *9. The Court will adhere to its prior ruling, and finds that at the pleadings stage, Mr. Teague has adequately alleged a violation of the FTC Act and that he is among the class of persons intended to be protected by the FTC Act, and therefore has stated a claim for negligence per se.

### C.     Mr. Teague's states a claim for recovery of expenses of litigation.

AGC asks the court to dismiss Mr. Teague's claim for recovery of litigation expenses under O.C.G.A. § 13-6-11.[7] AGC argues that Plaintiff's claim should be dismissed because Mr. Teague has failed to allege sufficient facts to support the bad faith prong, and because there is a bona fide dispute between the parties. (Doc. 12 at 21–22). Meanwhile, Plaintiff argues that the Amended Complaint plausibly alleges that Defendant acted in bad faith through its failure to provide safeguards to the personal data in its possession. (Doc. 4 ¶ 36).

The bad faith finding required by O.C.G.A. § 13-6-11 must be "connected with transaction and dealings out of which the cause of action arose, rather than

---

[7] O.C.G.A. § 13-6-11 provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

bad faith in defending . . . the claim after the cause of action has already arisen." *In re Equifax, Inc.*, 362 F. Supp. 3d at 1345. Here, Plaintiff adequately pleads that Defendant knew of deficiencies to its data security systems and failed to implement security measures while knowing (or while it reasonably should have known) about the importance of safeguarding PII. The Court finds that these allegations are sufficient to plead bad faith at this stage.

> **D.    The Court grants Mr. Teague's request to amend his implied contract claim.**

AGC seeks dismissal of Count III of Mr. Teague's Complaint, which alleges a breach of implied contract. (Doc. 12 at 16). AGC is correct that under Georgia law an "implied contract is the same as express contract except that an implied contract requires a different mode of proof." (*Id.*). A valid contract requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1; *see Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1381 (N.D. Ga. 2021). Mutual assent, or a meeting of the minds, "is the first requirement of the law relative to contracts." *Id.* (quoting *Simmons v. McBride*, 492 S.E.2d 738 (Ga. 1997)). AGC argues, and the Court agrees, that Plaintiff has failed to allege facts showing that AGC agreed to be bound by any data retention or protection policy. (Doc. 12 at 17).

In his Reply, Mr. Teague requested leave to amend his pleadings. (Doc. 23 at 10 n.2, 18). Under the Federal Rules of Civil Procedure, a district court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017). Therefore, rather than dismissing this count, the Court will give Mr. Teague leave to amend to include "any . . . facts or circumstances that indicate how Defendant allegedly manifested an intent to provide data security as part of the parties' employment agreement." *Id.* at 1382. If the Complaint is amended to cure these deficiencies, the Court would be inclined to permit these counts to proceed for the reasons that Judge May persuasively gave in *Purvis*. 563 F. Supp. 3d at 1380–82 ("[T]he Court is unpersuaded by Defendant's argument that other courts have declined to permit statements in a privacy policy to be deemed contractual obligations . . . . Aside from suggesting that Plaintiffs cannot plead an implied contract claim in the alternative (or that an additional term should not be implied into the parties' pre-existing agreements), Defendant's primary argument is that Plaintiffs fail to point to any acts or words indicating Defendant's intent to provide data security as a contractual promise . . . . The Court disagrees . . . . Plaintiffs also allege that the Privacy Policy was made available to patients upon request and was posted on Defendant's website.").

### E.   Mr. Teague does not state a claim for unjust enrichment.

Mr. Teague pled his unjust enrichment claim as an alternative to his breach of contract claim. (Doc. 4 ¶ 205). To state a claim for unjust enrichment, a plaintiff must allege four factors. In the absence of a contract the plaintiff must show (1) the plaintiff conferred a direct benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it. *Miller v. NextGen Healthcare, Inc.*, No. 1:23-CV-2043-TWT, 2024 WL 3543433, at *2 (N.D. Ga. July 25, 2024). In the Complaint, Mr. Teague alleged that his Private Information was the benefit conferred on AGC. (Doc. 4 ¶ 206). AGC argues that this claim fails because Mr. Teague "received employment-related benefits from AGC, . . . provided his PII to AGC in connection with employment-related benefits, and . . . received those employment-related benefits." (Doc. 12 at 19–20). "In other words, Plaintiff got what he paid for." (Doc. 12 at 20).

Mr. Teague counters that AGC received his Private Information which he claims has independent monetary value. (Doc. 23 at 16). Mr. Teague further claims that he reasonably expected that AGC would secure his Private Information. (*Id.* at 17). But nothing in the Complaint suggests that AGC received an independent monetary benefit from Mr. Teague's Private Information. Nor do the allegations

21

suggest that Mr. Teague entered into an employment arrangement with the expectation that his labor or Private Information would be used to pay for additional data security. Mr. Teague's insistence that he "would not have entrusted his Private Information to AGC" had he known of the inadequate security measure does not plausibly plead that AGC was unjustly enriched by receiving the Private Information. (*Id.*). Thus, Mr. Teague's unjust enrichment claim must be dismissed. Moreover, the Court finds that leave to amend would be futile because Mr. Teague points to no case law finding that the provision of Private Information to an employer as part of onboarding, rather than a vendor of goods or services as part of a transaction, confers a benefit on the employer, particularly where Mr. Teague asserts the value of his Personal Information is, aside from fraud, in marketing to consumers. (Doc. 22 at 16); *cf. In re Equifax, Inc.*, 362 F. Supp. 3d at 1329; *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 537 (M.D. Pa. 2021); *Resnick*, 693 F.3d at 1328.

### Conclusion

For the reasons the Court gave above, Defendant's Motion to Dismiss (Doc. 12) is **GRANTED IN PART** and **DENIED IN PART**. Count IV is **DISMISSED WITH PREJUDICE**.[8] Defendant's Motion to Dismiss Counts III and V of the

---

[8] Plaintiff withdrew his claim for breach of the implied covenant of good faith and fair dealing without prejudice. (Doc. 23 at 16).

Complaint is **GRANTED with LEAVE TO AMEND** as to Count III only.

Defendant's Motion to Dismiss Counts I, II, and VI is **DENIED**. It is further

ORDERED that

Plaintiff is **GRANTED LEAVE** to file a Second Amended Complaint which

complies with this Order within 14 days of the date of entry of this Order.

**SO ORDERED** this 6th day of January, 2025.

Victoria Marie Calvert
United States District Judge